Scott O. Luskin, Bar No. 238082
sol@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
200 N. Pacific Coast Highway, Suite 825
El Segundo, California 90245
Telephone: (310) 689-1750
Facsimile: (310) 689-1755

Ronald P. Mysliwiec (Pro Hac Vice anticipated)
Law Offices of Ronald P. Mysliwiec
rpm@rpmlawny.com
530 Third Street
Brooklyn, New York 11215
Telephone: (718) 768-4581

Attorneys for Plaintiff Roslyn La Liberte

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROSLYN LA LIBERTE,<br><br>    Plaintiff,<br><br>    v.<br><br>JOY REID,<br><br>    Defendant. | Case No. 2:21-mc-1070<br><br>**DECLARATION OF RONALD P. MYSLIWIEC IN SUPPORT OF MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH DEPOSITION SUBPOENA**<br><br>**Date:**<br>**Time:**<br>**Location:** |

I, Ronald P. Mysliwiec, Esq. declare:

1.  I am an attorney duly admitted to practice before the United States District Court for the Eastern District of New York. The court which issued the subpoena which is the subject of this motion to compel. I am attorney of record for Plaintiff Roslyn La Liberte.

2.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein. I make this declaration in support of plaintiff's motion to compel non-party Harold Eisner's compliance with plaintiff's deposition subpoena.

3.  The non-party witness deposition *subpoena ad testificandum* whose enforcement is now sought against Harold "Hal" Eisner, was issued by the United States District Court for the Eastern District of New York in La Liberte v. Reid, E.D.N.Y. Index No. 18-cv-5398. (Attached hereto as Exhibit A is a true copy and correct copy of the subpoena and proof of service.) That lawsuit is a defamation action claiming that defendant Reid posted defamatory comments about plaintiff Roslyn La Liberte on Twitter, Instagram, and Facebook between June 29, 2018 and July 1, 2018. (Attached hereto as Exhibit B is a true and correct copy of operative Complaint without Exhibits.)

4.  Those posts related to a Simi Valley Town Council meeting held on June 25, 2018, concerning the then-pending SB 54, sometimes referred to as California's sanctuary law. Specifically, Reid posted on her social media accounts that Ms. LaLiberte verbally assaulted and bullied a vulnerable, Mexican-American child at the meeting, using racist language and screaming at him in a hate-fueled

1  rage, specifically calling him a "dirty Mexican" and attributing to Ms. La Liberte the
2  statement, "You are going to be the first deported." (Attached hereto as Exhibit C is
3  a true and correct copy of some posts at issue.)

5  5. These things were untrue. At her recent deposition in the E.D.N.Y.
6  lawsuit, Reid admitted that she was not present at the Simi Valley meeting and that
7  her posts were based entirely on assumptions. Nonetheless, because she is a
8  nationally known journalist and political commentator (MSNBC), with 1.24 million
9  followers on Twitter alone, Reid's social media posts had a devastating effect on
10 Ms. La Liberte.

12 6. For example, beginning on June 28 and growing exponentially
13 between June 29 and July 1, 2018, Ms. La Liberte received between 10,000 and
14 15,000 telephone calls on her personal and business telephone lines (including text
15 messages and voicemails). While the content of most of these calls is no longer
16 available, hundreds of the emails she received are. They consist of the vilest insults
17 and crudest threats made in the most indecent and profane language possible, by
18 people who had no first-hand knowledge of the events at the Simi Valley Town
19 Council Meeting, but who acted on a mistaken "assumption", just as defendant Reid
20 had acted.

22 7. On June 29, 2018, KTTV Channel 11 television reporter Hal Eisner,
23 himself a resident of Simi Valley, interviewed on camera the young man whom
24 plaintiff was accused of verbally assaulting, Joseph Luevanos. Importantly, Mr.
25 Luevanos twice stated during his interview by Mr. Eisner that Ms. La Liberte was
26 "civil" to him at all times during their conversation at the Town Council meeting.
27 any negative things about him. (Attached hereto as Exhibit D and E are true and
28 correct copies of an email regarding the Eisner broadcast and a writeup.  Exhibit D

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

contains the YouTube link for the video interview.) He did not say that she raised her voice to him or interrupted him.

8. Mr. Eisner's interview was publicly broadcast later that same day on a Channel 11 News program.

9. At his recent deposition more than three years later, Joseph Luevanos changed his story considerably. He testified four times that Ms. La Liberte: was yelling or screaming at him or speaking "louder and louder" to him. He also testified that she interrupted him and said negative things about him. When asked why he told Mr. Eisner that Ms. La Liberte had been "civil" to him, he responded that he had told Mr. Eisner, on camera, that she had been civil to him only in comparison to other anti- SB 54 attendees. At his deposition Mr. Luevanos testified four times that Mr. Eisner's interview of him had been edited before it was broadcast by Channel 11.

10. A review of Mr. Eisner's interview as broadcast by Channel 11 – especially the words and demeanor of Mr. Luevanos who had his mother present at all times – leave no doubt that he was telling the truth in that interview and not at his deposition taken years later. In retrospect, Mr. Luevanos may now think that he was naïve when he was candid and told the truth to Mr. Eisner on June 29, 2021. His political consciousness may have been raised since then, but only at the price of his honesty.

11. Plaintiff seeks no sources from Mr. Eisner. Also, she seeks no unpublished outtakes, notes or other unpublished materials relating to Mr. Eisner's June 29, 2018 interview. Mr. Eisner's counsel has recently admitted that no such unpublished materials exist. (Attached hereto as Exhibit F is a true and correct copy

of an email from Eisner's counsel). Plaintiff simply wants Mr. Eisner, at deposition, to authenticate his broadcast interview, pursuant to Federal Rules of Evidence 901 and 902, as a fair, accurate and correct recording of his interview.

12. After two months Mr. Eisner has refused voluntarily to comply with Ms. La Liberte's deposition subpoena.

## THE SIMI VALLEY TOWN COUNCIL MEETING

13. The events underlying the lawsuit now pending in the E.D.N.Y. began with a Simi Valley Town Council meeting on the evening of June 25, 2018. That meeting was called to take public comment on California S.B. 54, sometimes called a "sanctuary law", which prohibited California's Department of Corrections from reporting to the U.S. Immigration and Customs Enforcement agency ("ICE") the impending release of certain undocumented aliens in the custody of that department.

14. The Town Council meeting lasted for several hours and many members of the public gave brief statements in support of or in opposition to S.B. 54. Plaintiff Roslyn La Liberte spoke against the bill. A young man, by the name of Joseph Luevanos, aged 14, spoke in favor of the legislation .

15. During an intermission in the lengthy Town Council proceedings, Ms. La Liberte and the young Mr. Luevanos had their own conversation about the matter at hand. At some point during that intermission, a photo journalist from the local newspaper, the Ventura County Sun, took a still photograph of the event. The photograph contained images of Ms. La Liberte and Mr. Luevanos.

16. The two-dimensional photograph had the limitation that all two-dimensional photographs have when representing events that take place in three

spatial dimensions. The problem arises from limitations to a still camera's "depth of field". Because of the limitations to the way a camera can focus on different images at different distances from the camera's lens, the distance between images closer to the camera and those farther away can be made hard to judge. It is the price of reducing three spatial dimensions to two.

17. While the distance between Ms. La Liberte and Mr. Luevanos cannot be determined with any exactness from the photograph, it appears to the naked eye that Ms. La Liberte was <u>not</u> looking at Mr. Luevanos when the photo was taken. There are only three other things of note about the image of Ms. La Liberte in the photo: her mouth is open at the instant the shutter was snapped (like closed eyes, an unflattering pose), she is wearing a red MAGA hat and she has her right hand placed up near her throat.

### JOY REID BECOMES INVOLVED

18. Within two days after the photo was published in the Ventura County Sun, it was commandeered by political activists who were <u>not in attendance</u> at the Town Council meeting. Among them was defendant Joy Reid, a well-known television journalist and political commentator on cable news channel MSNBC.

19. Ms. Reid and the other activists misinterpreted the Ventura County Sun photograph and combined it with verbal commentary and another, unrelated but provocative photo portraying racial conflict in the 1950s, posting their condemnations of Ms. La Liberte on various social-media platforms. The point of which was falsely to paint Ms. La Liberte as a virulent racist because of what they inaccurately describe as her alleged, abusive "confrontation" with the 14-year-old Mr. Luevanos, an American of Hispanic descent. Ms. Reid published four social-media posts on the subject between June 29, 2018 and July 1, 2018. (Exhibit C.)

20. Ms. Reid's posted comments not only incorrectly attributed certain racist language to Ms. Liberte at that meeting, they also falsely attributed to her a menacing, hateful, bullying demeanor directed at the 14-year-old Mr. Luevanos: "He is 14 years old. She is an adult." Reid said that Ms. La Liberte was a "person screaming at a child with their face twisted in rage." Referring to Ms. La Liberte, Reid said: "Hate is real, y'all." (Exhibit C.)

21. At her deposition on August 16, 2021, Ms. Reid readily conceded that she acted on the basis of assumption, not actual knowledge. Further, she was motivated to do so by the tweet of a teenage, self-declared Chicano activist who was entirely anonymous to her, but whom she had incorrectly assumed was at the Simi Valley Town Council meeting. Ms. Reid's prominence as a nationally known journalist and commentator elevated her from the position of a mere member of the mob attacking Ms. La Liberte, to the position of an "influencer".

22. These posts did Ms. La Liberte enormous economic, reputational and emotional harm. For example, beginning on June 28 and growing exponentially between June 29 and July 1, 2018, Ms. La Liberte received between 10,000 and 15,000 telephone calls on her personal and business telephone lines (including text messages and voicemails). While the content of most of these calls is no longer available, hundreds of the emails she received are. They consist of the vilest insults and crudest threats made in the most indecent and profane language possible, by people who had no first-hand knowledge of the events at the Simi Valley Town Council Meeting, but who acted on a mistaken "assumption", just as defendant Reid had acted.

## PLAINTIFF LA LIBERTE SUES DEFENDANT REID

23. On September 25, 2018, plaintiff La Liberte sued defendant Reid for defamation in the United States District Court for the Eastern District of New York. (EDNY Index No.18-cv-5398.) On December 17, 2018, defendant brought a motion to dismiss for failure to state a claim and on other grounds. On September 30, 2019, that motion was granted by the District Court. On July 15, 2020, the District Court's decision was reversed by the U.S. Court of Appeals for the Second Circuit and the case was remanded for discovery. *See La Liberte v. Reid*, 966 F. 3d 79 (2d Cir. 2020).

24. On October 30, 2020, defendant Reid filed her Answer. Her Third Affirmative Defense was that: "Plaintiff's Complaint is barred because the allegedly defamatory statements are true or substantially true."

## NON-PARTY WITNESS HAROLD "HAL" EISNER

25. For 38 years non-party witness Harold "Hal" Eisner has been a fixture of broadcast news in Los Angeles. According to public sources, he has received numerous awards for his journalism, including a 2013 Mark Twain Award as Reporter of the Year, and a lifetime achievement award from the Los Angeles branch of the Academy of Television Arts and Sciences (*i.e.,* a regional Emmy). Mr. Eisner is, coincidentally, a resident of Simi Valley.

26. On May 29, 2018, Mr. Eisner interviewed Mr. Luevanos – in the presence of his mother in connection with the June 25 Simi Valley Town Council meeting and the enormous, hateful backlash against plaintiff La Liberte to which it had given rise.

27. During his videotaped interview of Mr. Luevanos, the latter twice stated, on camera, that plaintiff was, at all times civil to him at the Simi Valley Town Council meeting. He also expressed regret that Ms. La Liberte was being injured in her business by people jumping to erroneous conclusions about their conversation (which, according to Mr. Luevanos, was not a confrontation).

28. Mr. Eisner's interviews were broadcast on KTTV, Channel 11 News in Los Angeles later that same day. (Exhibit D.) Mr. Eisner also authored a written summary of his interviews, dated June 29, 2018, and published online by KTTV. (Exhibit E.)

29. On August 10, 2021, Mr. Luevanos testified at his own deposition. During the deposition he gave several different versions of his interaction with Ms. La Liberte at the Simi Valley Town Council Meeting, none of them were remotely as kind to her as the interaction he described in his broadcast interview with Mr. Eisner.

30. Mr. Luevanos testified, among other things, that Ms. La Liberte interrupted him when he tried to speak, that she spoke "louder and louder" to him, that she yelled and screamed at him and that they only hugged after their interchange – a fact that he did not deny because they were encouraged to do so by a security guard. He testified that Ms. La Liberte had been civil to him *only in comparison* to other SB 54 opponents. He also stated that he no longer regretted the economic damage that Ms. La Liberte's business was suffering. At his deposition Mr. Luevanos testified four times that he believed that his interview by Mr. Eisner had been edited before it was broadcast on KTTV.

**HAL EISNER REFUSES TO BE DEPOSED BY PLAINTIFF**

31.     On or about July 3, 2021, this declarant first made telephone contact with Mr. Eisner with the purpose of securing his deposition in the Eastern District of New York lawsuit. Mr. Eisner made it clear that he did not wish to be deposed but was nonetheless persuaded to review a one-page list of potential deposition questions.

32.     On July 6 declarant was informed by inhouse counsel at LA Channel 11 that California law *did not permit* the deposition of Mr. Eisner. (Attached hereto as Exhibit G is a true and correct copy of the emails.) On July 12 declarant was informed by the same inhouse counsel that, *if* plaintiff were to succeed in properly serving Mr. Eisner, such service would be followed by a motion to quash. (Attached hereto as Exhibit H if a true and correct copy of the email.)

33.     After four, unsuccessful attempts to personally serve a deposition *subpoena ad testificandum* on Mr. Eisner as required by FRCP 45, plaintiff La Liberte finally succeeded on July 23, 2021. (Exhibit A at 3.)  On August 2, 2021 outside counsel appeared on behalf of Mr. Eisner. On August 8, 2021 that counsel emailed a lengthy letter to declarant laying out the legal arguments which, according to outside counsel, insulated Mr. Eisner from being deposed in Ms. La Liberte's lawsuit against Ms. Reid. That letter was copied to no fewer than five members of defendant Reid's legal team. (Attached hereto as Exhibit I is a true and correct copy of the letter.)

34.      In response thereto plaintiff La Liberte has made it clear to Mr. Eisner that, whatever had been the case initially, she was seeking neither Mr. Eisner's sources, nor any unpublished materials relating to his interviews. The only thing that Ms. La Liberte needed from Mr. Eisner's testimony was his authentication of the

broadcast interview in its video and written forms – as fair, accurate and correct of the young Mr. Luevanos pursuant to FRE 901 and 902.

35. Importantly, in an email on September 9, 2021, Mr. Eisner's counsel, after a diligent search, stated that there were, in any event, no unpublished outtakes or notes relating to Mr. Eisner's May 29, 2018 interviews. (Exhibit F.)

36. After this issue was resolved, Mr. Eisner expressed a desire to debate the "relevance" of his interviews to *La Liberte v. Reid.* Since the relevance of the interviews to the lawsuit was obvious and intuitive to any fair-minded person, it became clear to Ms. Liberte that further meet and confer conversations were never going to be fruitful and that they would be a waste of time. Since the Magistrate Judge in her case against Ms. Reid had set an October 31, 2021 disovery cut-off date, time was something Ms. La Liberte could not afford to waste. This had to be resolved by judicial intervention.

37. On September 10, 2021, Ms. La Liberte's counsel expressed this view to Mr. Eisner's counsel. Mr. Eisner's counsel did not disagree.

DECLARATION OF RONALD P. MYSLIWIEC IN SUPPORT OF MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH DEPOSITION SUBPOENA

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 9/20/21, 2021

/s/
Ronald P. Mysliwiec, Esq.

4821-0749-3627.1