1  Scott O. Luskin, Bar No. 238082
   sol@paynefears.com
2  PAYNE & FEARS LLP
   Attorneys at Law
3  200 N. Pacific Coast Highway, Suite 825
   El Segundo, California 90245
4  Telephone: (310) 689-1750
   Facsimile: (310) 689-1755
5
   Ronald P. Mysliwiec (*Pro Hac Vice* anticipated)
6  Law Offices of Ronald P. Mysliwiec
   rpm@rpmlawny.com
7  530 Third Street
   Brooklyn, New York 11215
8  Telephone: (718) 768-4581
9  Attorneys for Plaintiff Roslyn La Liberte
10 [Other Counsel Listed on Signature Page]
11
12              **UNITED STATES DISTRICT COURT**
13             **CENTRAL DISTRICT OF CALIFORNIA**
14 ROSLYN LA LIBERTE,                    Case No. 2:21-mc-1070
15              Plaintiff,               **JOINT STIPULATION WITH**
                                         **RESPECT TO PLAINTIFF'S**
16       v.                              **MOTION TO COMPEL**
                                         **HAROLD EISNER'S COMPLIANCE**
17 JOY REID,                             **WITH SUBPOENA TO TESTIFY AT**
                                         **A DEPOSITION IN A CIVIL**
18              Defendant.               **ACTION**
19
20                                       **Date:** _____
21                                       **Time:**
                                         **Location:**
22
23                                       **Trial Date:** _____
24                                       **Judge:**
25
26
27
28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTORY STATEMENTS ...................................................1

    A.    Plaintiff's Introductory Statement ...............................1

    B.    Non-Party Harold Eisner's Introductory Statement ..................3

II.   PLAINTIFF'S STATEMENT OF BACKGROUND FACTS AND MEET AND CONFER EFFORTS .........................................6

    A.    The Simi Valley Town Council Meeting...................................6

    B.    Joy Reid Becomes Involved.........................................8

    C.    Plaintiff La Liberte Sues Defendant Reid...........................9

    D.    Non-Party Witness Harold "Hal" Eisner .................10

    E.    Hal Eisner Refuses to be Deposed by Plaintiff........................11

III.  RESPONDENT JOY REID'S STATEMENT OF BACKGROUND FACTS........................................................12

IV.   NON-PARTY HAROLD EISNER'S STATEMENT OF MEET & CONFER EFFORTS ........................................................16

V.    ARGUMENT ................................................................20

    A.    Plaintiff's Argument ................................................20

    B.    Non-Party Harold Eisner's Argument ........................22

        1.    The First Amendment Reporter's Privilege Bars Plaintiff's Requested Discovery ....................................25

i

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

2.      The Court Should Also Apply The Absolute Immunity
        Afforded Mr. Eisner Under The California Shield Law
        To Bar Plaintiff's Requested Discovery………….......31

3.      Regardless, The Motion Should Be Denied Because The
        Burden On Mr. Eisner Significantly Outweighs The
        Limited Relevance (If Any) Of The Requested
        Impeachment Discovery ..................................................33

VI.     CONCLUSION .......................................................................35

   A.   Plaintiff's Conclusion ............................................................35

   B.   Non-Party Harold Eisner's Conclusion ..................................35

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

## I. INTRODUCTORY STATEMENTS

Pursuant to Federal Rules of Civil Procedure 37 and 45, and Central District of California Local Civil Rules 37-1, 37-2, and 45-1, Plaintiff Roslyn La Liberte, Defendant Joy Reid, and deponent Harold Eisner ("Respondent") submit this Joint Stipulation with respect to La Liberte's motion to compel Harold Eisner's compliance with Subpoena to Testify at a Deposition in a Civil Action, dated July 12, 2021, and personally served on July 23, 2021. (Mysliwiec Decl. Ex. A)

### A. Plaintiff's Introductory Statement

The non-party witness deposition *subpoena ad testificandum* whose enforcement is now sought against Harold "Hal" Eisner, was issued by the United States District Court for the Eastern District of New York in *La Liberte v. Reid*, E.D.N.Y. Index No. 18-cv-5398. That lawsuit is a defamation action claiming that defendant Joy Reid posted defamatory comments about plaintiff Roslyn La Liberte on Twitter, Instagram, and Facebook between June 29, 2018 and July 1, 2018. (Mysliwiec Decl. Ex. B).

Those posts related to a Simi Valley Town Council meeting held on June 25, 2018, concerning the then-pending SB 54, sometimes referred to as California's sanctuary law. Specifically, Reid posted on her social media accounts that Ms. La Liberte verbally assaulted and bullied a vulnerable, Mexican-American child at the meeting, using racist language and screaming at him in a hate-fueled rage, specifically calling him a "dirty Mexican" and attributing to Ms. La Liberte the statement, "You are going to be the first deported." (Mysliwiec Decl. Ex. C)

These things were untrue. At her recent deposition in the E.D.N.Y. lawsuit, Reid admitted that she was not present at the Simi Valley meeting and that her

posts were based entirely on assumptions. Nonetheless, because she is a nationally known journalist and political commentator (MSNBC), with 1.24 million followers on Twitter alone, Reid's social media posts had a devastating effect on Ms. La Liberte.

For example, beginning on June 28 and growing exponentially between June 29 and July 1, 2018, Ms. La Liberte received between 10,000 and 15,000 telephone calls on her personal and business telephone lines (including text messages and voicemails). While the content of most of these calls is no longer available, hundreds of the emails she received are. They consist of the vilest insults and crudest threats made in the most indecent and profane language possible, by people who had no first-hand knowledge of the events at the Simi Valley Town Council Meeting, but who acted on a mistaken "assumption", just as defendant Reid had acted.

On June 29, 2018, KTTV Channel 11 television reporter Hal Eisner, himself a resident of Simi Valley, interviewed on camera the young man whom plaintiff was accused of verbally assaulting, Joseph Luevanos. Importantly, Mr. Luevanos twice stated during his interview by Mr. Eisner that Ms. La Liberte was "civil" to him at all times during their conversation at the Town Council meeting. He did not say that she raised her voice to him or that she said any negative things about him. (Mysliwiec Decl. Exs. D and E.)

Mr. Eisner's interview was publicly broadcast later that same day on a Channel 11 News program.

At his recent deposition more than three years later, Joseph Luevanos changed his story considerably. He testified four times that Ms. La Liberte: was yelling or screaming at him or speaking "louder and louder" to him. He also testified that she interrupted him and said negative things about him. When asked

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

why he told Mr. Eisner that Ms. La Liberte had been "civil" to him, he responded that he had told Mr. Eisner, on camera, that she had been civil to him <u>only</u> in comparison to other anti- SB 54 attendees. At his deposition Mr. Luevanos testified four times that Mr. Eisner's interview of him had been edited before it was broadcast by Channel 11.

A review of Mr. Eisner's interview as broadcast by Channel 11 – especially the words <u>and</u> demeanor of Mr. Luevanos in the interview of him with his mother present – leave no doubt that he was telling the truth in that interview and not at his deposition taken years later. In retrospect, Mr. Luevanos may now think that he was naïve when he was candid and told the truth to Mr. Eisner on June 29, 2021. His political consciousness may have been raised since then, but only at the price of his honesty.

Plaintiff seeks no sources from Mr. Eisner. Also, she seeks no unpublished outtakes, notes or other unpublished materials relating to Mr. Eisner's June 29, 2018 interview. (Mr. Eisner's counsel has recently admitted that no such unpublished materials exist.  Plaintiff simply wants Mr. Eisner, at deposition, to authenticate his broadcast interview, pursuant to Federal Rules of Evidence 901 and 902, as a fair, accurate and correct recording of his interview.

After two months Mr. Eisner has refused voluntarily to comply with Ms. La Liberte's deposition subpoena.

**B.**     **Non-Party Harold Eisner's Introductory Statement**

Plaintiff Roslyn La Liberte seeks to compel the deposition of non-party Hal Eisner, a reporter for KTTV Fox Channel 11, to purportedly "authenticate" as "fair, accurate, and correct" his news report published and broadcast by KTTV. The report covered social media reactions to a Ventura County Star newspaper photograph of plaintiff and then-14-year-old Joseph Luevanos (the

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY  SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

PAYNE & FEARS LLP

ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

"**Photograph**") taken at a June 25, 2018 Simi Valley Town Council Meeting (the "**Meeting**")[1] The Meeting involved heated debate over the "sanctuary city" issue. This lawsuit arises out of certain social media posts by defendant Joy Reid commenting on that Photograph.

Plaintiffs' motion should be denied under the First Amendment reporter's privilege and the absolute immunity provided by the California reporter's shield law. *Shoen v. Shoen,* 48 F.3d 412, 414 (9th Cir. 1995) (federal reporter's privilege); Cal. Cost. Art I, § 2 (b) (California shield law); Cal. Evid. Code § 1070 (same).

The motion should also be denied because, comparatively, the burden imposed on Mr. Eisner greatly outweighs the limited relevance of the requested discovery (if any). Fed. R. Civ. Proc. 26(b)(1); Fed. R. Civ. Proc. 45(d)(3).

The pertinent facts are not in dispute: [2] (1) Mr. Eisner is a KTTV Fox Channel 11 reporter. (2) Plaintiff subpoenaed Mr. Eisner to ask questions about his reporting. (3) KTTV Fox Channel 11's published reporting about the Photograph and Meeting featured Mr. Eisner's interviews of plaintiff and Mr. Luevanos in the days following the Meeting. (4) The only question plaintiff wants to ask Mr. Eisner is whether KTTV Fox Channel 11's published reporting is "fair, accurate, and correct."

Plaintiff does not seek testimony from Mr. Eisner about the Meeting. (Mr. Eisner was not there.) Nor does plaintiff want to depose Mr. Eisner about defendant's social media posts at issue in the lawsuit. (They were not mentioned

---

[1]  Plaintiff concedes each of these points; indeed, they are the basis for her motion.

[2]  The KTTV Fox 11 report can be found online at:
https://www.foxla.com/news/people-online-twist-the-real-story-behind-photo-of-woman-yelling-at-boy

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

in the report; indeed, the interview predated defendant's posts.)

Rather, plaintiff wants to ask Mr. Eisner about his interview of Mr. Luevanos, who also is a non-party in this action. In that interview, the teenager discussed the Meeting, the Photograph, and his interactions with plaintiff. In the report, Mr. Luevanos is quoted as saying that "I felt like she was still trying to keep it civil which I appreciate," and that Mr. Luevanos "heard some people were boycotting this woman's business. I don't really want that... because she was being civil."

However, plaintiff now believes that Mr. Luevanos has "backtracked" from those published statements, testifying at his deposition that what he really said is that plaintiff was civil "compared to some of the other people" at the Meeting, that plaintiff frequently "interrupted" him, and that plaintiff spoke progressively "louder and louder" at him, but that those details were edited out of Mr. Eisner's reporting.

What plaintiff really wants is to force Mr. Eisner, a non-party, to provide extrinsic impeachment testimony against Mr. Luevanos, another non-party.[3] Plaintiff wants to cast doubt on Mr. Luevanos' testimony by asking Mr. Eisner to confirm that the three-year-old story was a "true, accurate, and correct" report of what Mr. Luevanos said in his interview.

Setting aside for a moment the irrelevance of the inadmissible hearsay testimony plaintiff wants to elicit, plaintiff's proffered question clearly seeks

---

[3]  Plaintiff claims she only wants Mr. Eisner to "authenticate" the interview of Mr. Luevanos broadcast on KTTV Fox Channel 11 "as a fair, accurate and correct recording of his interview" for evidentiary purposes. But Plaintiff does not need Mr. Eisner to authenticate KTTV's broadcast, and those are not the standards for evidentiary authentication in any event. Authentication is merely the process of proving that "an item is what the proponent claims it is." Fed. R. Evid. 901.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

protected newsgathering information. ***Distilled to its essence, plaintiff wants to ask Mr. Eisner whether the unpublished portions of his interview with Mr. Luevanos are consistent with the published portions.***

Despite plaintiff's claim to the contrary, the First Amendment reporter's privilege is not limited to unpublished material and confidential sources. It applies to all newsgathering activities and materials. But even if it was limited to such information, the privilege still applies because plaintiff's question ***would*** invade Mr. Eisner's unpublished work by implication. It would also subject Mr. Eisner to cross-examination that would invade his unpublished work.

The requested discovery is also manifestly irrelevant to plaintiff's libel claim, which has nothing to do with the vague concept of "civility" (a notion that could not possibly support a defamation claim). With respect to the first post at issue plaintiff alleges that defendant falsely accused her of telling Mr. Luevanos that he was "going to be the first deported" and that she called him a "dirty Mexican"). The second post juxtaposed the Photograph against a 1950's-era desegregation photo.

The testimony plaintiff seeks goes to neither post. Whether plaintiff was "civil" or just "civil compared to some of the other people" is not actionable. Even if it were, it is not at issue in plaintiff's case. And it certainly is not material enough to justify compelling a non-party journalist to testify about his newsgathering.

## II. PLAINTIFF'S STATEMENT OF BACKGROUND FACTS AND MEET AND CONFER EFFORTS

### A. The Simi Valley Town Council Meeting

The events underlying the lawsuit now pending in the E.D.N.Y. began with

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

6

a Simi Valley Town Council meeting on the evening of June 25, 2018[4.] That meeting was called to take public comment on California S.B. 54, sometimes called a "sanctuary law", which prohibited California's Department of Corrections from reporting to the U.S. Immigration and Customs Enforcement agency ("ICE") the impending release of certain undocumented aliens in the custody of that department.

The Town Council meeting lasted for several hours and many members of the public gave brief statements in support of or in opposition to S.B. 54. Plaintiff Roslyn La Liberte spoke against the bill. A young man, by the name of Joseph Luevanos, aged 14, spoke in favor of the legislation.

During an intermission in the lengthy Town Council proceedings, Ms. La Liberte and the young Mr. Luevanos had their own conversation about the matter at hand. At some point during that intermission, a photo journalist from the local newspaper, the Ventura County Sun, took a still photograph of the event. The photograph contained images of Ms. La Liberte and Mr. Luevanos.

The two-dimensional photograph had the limitation that all two-dimensional photographs have when representing events that take place in three spatial dimensions. The problem arises from limitations to a still camera's "depth of field." Because of the limitations to the way a camera can focus on different images at different distances from the camera's lens, the distance between images closer to the camera and those farther away can be made hard to judge. It is the price of reducing three spatial dimensions to two.

While the distance between Ms. La Liberte and Mr. Luevanos cannot be determined with any exactness from the photograph, it appears to the naked eye

---

[4]  The facts are more fully described in the Mysliwiec declaration.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

that Ms. La Liberte was <u>not</u> looking at Mr. Luevanos when the photo was taken. There are only three other things of note about the image of Ms. La Liberte in the photo: her mouth is open at the instant the shutter was snapped (like closed eyes, an unflattering pose), she is wearing a red MAGA hat and she has her right hand placed up near her throat.

**B.    Joy Reid Becomes Involved**

Within two days after the photo was published in the Ventura County Sun, it was commandeered by political activists who were <u>not in attendance</u> at the Town Council meeting. Among them was defendant Joy Reid, a well-known television journalist and political commentator on cable news channel MSNBC.

Ms. Reid and the other activists misinterpreted the Ventura County Sun photograph and combined it with verbal commentary and another, unrelated but provocative photo portraying racial conflict in the 1950s, posting their condemnations of Ms. La Liberte on various social-media platforms. The point of which was falsely to paint Ms. La Liberte as a virulent racist because of what they inaccurately describe as her alleged, abusive "confrontation" with the 14-year-old Mr. Luevanos, an American of Hispanic descent. Ms. Reid published four social-media posts on the subject between June 29, 2018 and July 1, 2018. (Mysliwiec Decl Ex. C.)

Ms. Reid's posted comments not only incorrectly attributed certain racist language to Ms. Liberte at that meeting, they also falsely attributed to her a menacing, hateful, bullying demeanor directed at the 14-year-old Mr. Luevanos: "He is 14 years old. She is an adult." Reid said that Ms. La Liberte was a "person screaming at a child with their face twisted in rage." Referring to Ms. La Liberte, Reid said: "Hate is real, y'all." (*Id.*)

At her deposition on August 16, 2021, Ms. Reid readily conceded that she

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

acted on the basis of assumption, not actual knowledge. Further, she was motivated to do so by the tweet of a teenage, self-declared Chicano activist who was entirely anonymous to her, but whom she had incorrectly assumed was at the Simi Valley Town Council meeting. Ms. Reid's prominence as a nationally known journalist and commentator elevated her from the position of a mere member of the mob attacking Ms. La Liberte, to the position of an "influencer".

These posts did Ms. La Liberte enormous economic, reputational and emotional harm. For example, beginning on June 28 and growing exponentially between June 29 and July 1, 2018, Ms. La Liberte received between 10,000 and 15,000 telephone calls on her personal and business telephone lines (including text messages and voicemails). While the content of most of these calls is no longer available, hundreds of the emails she received are. They consist of the vilest insults and crudest threats made in the most indecent and profane language possible, by people who had no first-hand knowledge of the events at the Simi Valley Town Council Meeting, but who acted on a mistaken "assumption", just as defendant Reid had acted.

### C.   Plaintiff La Liberte Sues Defendant Reid

On September 25, 2018, plaintiff La Liberte sued defendant Reid for defamation in the United States District Court for the Eastern District of New York.  (EDNY Index No.18-cv-5398.)  On December 17, 2018, defendant brought a motion to dismiss for failure to state a claim and on other grounds. On September 30, 2019, that motion was granted by the District Court. On July 15, 2020, the District Court's decision was reversed by the U.S. Court of Appeals for the Second Circuit and the case was remanded for discovery. *See La Liberte v. Reid*, 966 F. 3d 79 (2d Cir. 2020).

On October 30, 2020, defendant Reid filed her Answer. Her Third

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Affirmative Defense was that: "Plaintiff's Complaint is barred because the allegedly defamatory statements are true or substantially true."

### D.   Non-Party Witness Harold "Hal" Eisner

For 38 years non-party witness Harold "Hal" Eisner has been a fixture of broadcast news in Los Angeles. According to public sources, he has received numerous awards for his journalism, including a 2013 Mark Twain Award as Reporter of the Year, and a lifetime achievement award from the Los Angeles branch of the Academy of Television Arts and Sciences (*i.e.,* a regional Emmy).

Mr. Eisner is, coincidentally, a resident of Simi Valley.

On May 29, 2018, Mr. Eisner interviewed Mr. Luevanos – in the presence of his mother – in connection with the June 25 Simi Valley Town Council meeting and the enormous, hateful backlash against plaintiff La Liberte to which it had given rise.

During his videotaped interview of Mr. Luevanos, the latter twice stated, on camera, that plaintiff was, at all times civil to him at the Simi Valley Town Council meeting. He also expressed regret that Ms. La Liberte was being injured in her business by people jumping to erroneous conclusions about their conversation (which, according to Mr. Luevanos, was not a confrontation).

Mr. Eisner's interviews were broadcast on KTTV, Channel 11 News in Los Angeles later that same day. (Mysliwiec Decl Ex. G.) Mr. Eisner also authored a written summary of his interviews, dated June 29, 2018, and published online by KTTV. (Mysliwiec Decl Ex. D.)

On August 10, 2021, Mr. Luevanos testified at his own deposition. During the deposition he gave several different versions of his interaction with Ms. La Liberte at the Simi Valley Town Council Meeting, none of them were remotely as kind to her as the interaction he described in his broadcast interview with Mr.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S
COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

Eisner.

Mr. Luevanos testified, among other things, that Ms. La Liberte interrupted him when he tried to speak, that she spoke "louder and louder" to him, that she yelled and screamed at him and that they only hugged after their interchange – a fact that he did not deny – because they were encouraged to do so by a security guard. He testified that Ms. La Liberte had been civil to him *only in comparison* to other SB 54 opponents. He also stated that he no longer regretted the economic damage that Ms. La Liberte's business was suffering.  At his deposition Mr. Luevanos testified four times that he believed that his interview by Mr. Eisner had been edited before it was broadcast on KTTV.

### E.   Hal Eisner Refuses to be Deposed by Plaintiff

On or about July 3, 2021, Plaintiff's counsel made telephone contact with Mr. Eisner with the purpose of securing his deposition in the Eastern District of New York lawsuit. Mr. Eisner made it clear that he did not wish to be deposed, but was nonetheless persuaded to review a one-page list of potential deposition questions.

On July 6 declarant was informed by inhouse counsel at LA Channel 11 that California law *did not permit* the deposition of Mr. Eisner. (Mysliwiec  Decl. Ex. G.) On July 12 declarant was informed by the same inhouse counsel that, *if* plaintiff were to succeed in properly serving Mr. Eisner, such service would be followed by a motion to quash. (Mysliwiec Decl. Ex. H.)

After four, unsuccessful attempts to personally serve a deposition *subpoena ad testificandum* on Mr. Eisner as required by FRCP 45, plaintiff La Liberte finally succeeded on July 23, 2021. (Mysliwiec Decl. Ex. A at 3.)  On August 2, 2021 outside counsel appeared on behalf of Mr. Eisner. On August 8, 2021 that counsel emailed a lengthy letter to declarant laying out the legal arguments which,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY  SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

according to outside counsel, insulated Mr. Eisner from being deposed in Ms. La Liberte's lawsuit against Ms. Reid. That letter was copied to no fewer than five members of defendant Reid's legal team. (Mysliwiec Decl. Ex. I.)

In response thereto plaintiff La Liberte has made it clear to Mr. Eisner that, whatever had been the case initially, she was seeking neither Mr. Eisner's sources, nor any unpublished materials relating to his interviews. The only thing that Ms. La Liberte needed from Mr. Eisner's testimony was his authentication of the broadcast interview in its video and written forms – as fair, accurate and correct – of the young Mr. Luevanos pursuant to FRE 901 and 902.

Importantly, in an email on September 9, 2021, Mr. Eisner's counsel, after a diligent search, stated that there were, in any event, no unpublished outtakes or notes relating to Mr. Eisner's May 29, 2018 interviews. (Mysliwiec Decl. Ex. F.)

After this issue was resolved, Mr. Eisner expressed a desire to debate the "relevance" of his interviews to *La Liberte v. Reid*. Since the relevance of the interviews to the lawsuit was obvious and intuitive to any fair-minded person, it became clear to Ms. Liberte that further meet and confer conversations were never going to be fruitful and that they would be a waste of time. Since the Magistrate Judge in her case against Ms. Reid had set an October 31, 2021 discovery cut-off date, time was something Ms. La Liberte could not afford to waste. This had to be resolved by judicial intervention.

On September 10, 2021, Ms. La Liberte's counsel expressed this view to Mr. Eisner's counsel. Mr. Eisner's counsel did not disagree.

## III.   RESPONDENT JOY REID'S STATEMENT OF BACKGROUND FACTS

Plaintiff seeks to compel the deposition of Hal Eisner to support her

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

position that she was "civil" in the confrontation she had with 14-year old Joseph Luevanos at a June 25, 2018 Simi Valley City Council Meeting ( the "Council Meeting"). Ms. Reid is not taking a position with respect to the dispute over Mr. Eisner's deposition; however, submits her own recitation of facts to clarify the record.

Plaintiff was screaming at 14-year old Joseph at the Council Meeting. Before filing this lawsuit, Plaintiff gave a media interview where she admitted in reference to her confrontation with Joseph: "That was wrong to be yelling. That was wrong." She also referred to her conduct as an "explosion." In her deposition, Plaintiff confirmed that was her characterization of the events during that interview.

Joseph himself testified that the confrontation with Plaintiff was anything but civil. J. Luevanos Dep. Tr. at 78-79. When Ruth Luevanos, Joseph's mother, saw the confrontation between Plaintiff and Joseph, she immediately recognized her son as being in danger. R. Luevanos Dep. Tr. at 14-15. An attendee at the Council Meeting testified in graphic detail about Plaintiff's verbal assault of Joseph. The witness testified that she was so alarmed by Plaintiff's aggressive conduct that she sought the intervention of law enforcement to break up the confrontation. Martinez-Bravo Dep. Tr. at 23-25, 27.

Plaintiff's statement of facts contains numerous other misrepresentations and omissions. As just one example, Plaintiff asserts that Ms. Reid testified that her posts about Plaintiff's conduct were only based on "assumptions." That was not Ms. Reid's testimony, and Plaintiff's recitation omits how Ms. Reid's posts came to be published and how Ms. Reid learned of the incident from what she understood to be an eyewitness account. Plaintiff's summary is also silent on the context of this incident.

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

In 2018, a group of 20 to 30 anti-immigrant activists were going from one California town council meeting to another urging municipalities to oppose SB 54, the California law that limits cooperation between California enforcement officials and federal immigration authorities.   Many of these protesters were affiliated with groups, which have been identified by the Southern Poverty Law Center ("SPLC") and other organizations as hate groups.  An April 1, 2019 article in the *Santa Clarita Advance Post Times*, entitled "One Year later – Attack on SB 54; the MAGA Caravan Invasion of Santa Clarita," said the following of certain SB 54 opponents:

> They are argumentative, boisterous, combative and outspoken.  Their caravan goes from city to city, fostering divisive anti-immigrant discussions and disrupting the meeting they attend.

Plaintiff was a member of the caravan, and she is no stranger to political violence.  At a pro-Trump rally in 2017, Plaintiff was captured on video punching a young woman.  Plaintiff testified against SB 54 at city council meetings in Los Alamitos, Redondo Beach, Corona, El Segundo, Hawthorne, Hermosa Beach, and West Covina.  She ultimately went to Simi Valley.

The Council Meeting in Simi Valley was ugly.  Plaintiff attended the Council Meeting with two known white supremacists: Harim Uziel and Elsa Aldeguer.  Prior to the Council Meeting, Uziel had been the subject of two SPLC alerts for his disruptive activities.  He had been thrown off at least two American Airlines flights and forcibly removed from other events.  True to form, Uziel was evicted from the Council Meeting because of his disruptive actions.  Plaintiff high-fived him on his way out.  As for Aldeguer, she has been repeatedly photographed with different Proud Boys and flashing the okay sign, a well-known white supremacy hand gesture.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

On June 26, 2018, the Ventura County Star published the photograph of Plaintiff screaming at Joseph with her hand at her throat.  The caption identified La Liberte by name and provided her city of residence.

Between June 28 and June 29, 2018, before Ms. Reid's posts that are the subject of this lawsuit were published, accusations of racism against La Liberte went viral with posts from celebrities such as Nancy Sinatra, Nadine van der Velde, David Hogg, Immortal Technique, and Soledad O'Brien.  On June 28, 2018 at 8.51 p.m., a man named Alan Vargas tweeted the photograph of La Liberte and suggested she made racial slurs.  Mr. Vargas was at the Council Meeting, and his tweet went viral.

Mr. Eisner conducted his interview of Plaintiff early in the day on June 29. Eisner described the "tweeted-photo" as "rac[ing] through social media like a wildfire."  Again, this occurred before any of Ms. Reid's posts.

On the evening of June 29, 2018, Ms. Reid published the Instagram Post in which she republished the photograph of La Liberte and Joseph with her own comment.  Importantly, Ms. Reid never identified Plaintiff by name.  On July 2, 2018, after Ms. Reid learned of Mr. Eisner's interview and received a demand for an apology from Plaintiff's counsel, she posted an apology out of an abundance of caution, but despite multiple witnesses and close associates of Joseph telling her that what she posted was truthful, including Joey's mother after Joy issued her apology.[5]

---

[5]  In her Stipulation, Plaintiff repeatedly suggests that Mr. Eisner's counsel has represented that no unaired footage or outtakes of Mr. Eisner's interview of Joey exists.  It is worth noting that in his correspondence to date, Mr. Eisner has only stated that no such footage currently exists; he does not address whether there was footage that was not included in the published interview at the time of the broadcast (June 2018), which has since been deleted or destroyed in the ordinary course of business by Fox 11.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Plaintiff filed this lawsuit in September 2018.  On July 15, 2020, after the lower court dismissed Plaintiff's complaint and granted Ms. Reid's anti-SLAPP motion to strike, the Second Circuit reversed, holding that California's anti-SLAPP law does not apply in federal court, finding La Liberte stated a claim for relief, and ordering the parties to proceed to discovery.  *La Liberte v. Reid*, 966 F. 3d 79 (2d Cir. 2020).  The parties are in the middle of discovery in the Eastern District of New York.

## IV.    NON-PARTY HAROLD EISNER'S STATEMENT OF MEET & CONFER EFFORTS

Plaintiff served Mr. Eisner with the deposition subpoena at issue on July 23, 2021. The subpoena initially set a deposition date of August 18, 2021.

On August 2, 2021, Mr. Eisner's counsel emailed plaintiff's counsel Ronald Mysliwiec to inform Mr. Mysliwiec that he would be representing Mr. Eisner with respect to the subpoena, advised Mr. Mysliwiec that he was not available on the date scheduled, and invited a call to discuss the substantive issues surrounding the requested deposition. [Declaration of Joel M. Tantalo ("**Tantalo Dec.**") ¶ 3, Ex. 1]

Mr. Mysliwiec did not respond to that email, so on August 5, 2021, Mr. Eisner's counsel sent Mr. Mysliwiec a detailed letter outlining "Mr. Eisner's objections to the subpoena and, to the extent you wish to pursue this matter further by motion practice, an invitation to meet-and-confer concerning the issues pursuant to Central District Local Rule 45-1, incorporating Local Rule 37." [Tantalo Dec. ¶ 4, Ex. 2]

Mr. Mysliwiec did not initially respond to that letter, either, or otherwise communicate with Mr. Eisner's counsel, until August 23, 2021 (18 days later), when Mr. Mysliwiec emailed Mr. Eisner's counsel to ask "[w]hen will it be

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

convenient to speak about the deposition of Hal Eisner?" [Tantalo Dec. ¶ 5, Ex. 3]

Mr. Eisner's counsel and Mr. Mysliwiec then spoke by telephone on Monday, August 30, 2021, beginning a meet-and-confer process that spanned eleven days and numerous telephone calls and emails. [Tantalo Dec. ¶ 6] During that August 30th call, Mr. Mysliwiec explained that he sought only a very limited deposition to "authenticate" Mr. Eisner's published news report.[6] Mr. Mysliwiec then confirmed that limitation in an email to me on September 1, 2021, clarifying that plaintiff "seeks neither sources nor unpublished material from Mr. Eisner at his deposition. [She] simply needs him to authenticate his interviews of Mr. Luevanos and Ms. La Liberte as broadcast on Channel 11 on June 29, 2018, as fair, accurate and correct representations of those interviews." [Tantalo Dec. ¶ 6, Ex. 5]

Later in the afternoon on September 1st, Mr. Mysliwiec sent Mr. Eisner's counsel another email. In that email, Mr. Mysliwiec said that "As I told you on the telephone earlier today, since we are seeking neither Mr. Eisner's sources nor any unpublished materials relating to his June 29, 2018 interviews of Ms. La Liberte and Mr. Luevanos, are [*sic*] subpoena to Mr. Eisner is not barred by either the U.S. Constitution, the CA Constitution or the CA Rules of evidence. Moreover, for the same reason, no 'balancing test' or other, heightened requirement is applied here. Only FRCP Rule 26 controls. The information sought must merely be relevant to any party's claim or defense. Rule 26 says relevant, not

---

[6] Mr. Mysliwiec had previously contacted Mr. Eisner directly, and thereafter corresponded with Fox 11's in-house attorney about plaintiff's desire to depose Mr. Eisner. Fox 11's attorney advised plaintiff's counsel that Mr. Eisner would invoke the reporter's privilege in response to a subpoena. During that process, Mr. Mysliwiec provided a list of 8 lines of questions he intended to pose to Mr. Eisner as his deposition. [Tantalo Dec. ¶ 6 n. 1, Ex. 4]

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

dispositive." Mr. Mysliwiec continued, "It is my best information that both Joseph Luevanos and his mother, Ruth, have testified at their depositions that Mr. Eisner or Channel 11 cut parts of the interview before it was aired. In the interview and in the broadcast thereof, Joseph says that Ms. La Liberte was civil to him at all times. At their depositions both mother and son said that during the interview Joseph said that Ms. La Liberte was "civil compared to others", a less favorable evaluation of Ms. La Liberte in a lawsuit defendant is trying to prove that Ms. La Liberte is a racist. In these circumstances it is not only the exact words that matter, but how Ms. La Liberte spoke to someone whom defendant has described in her deposition as a 'child.'" [Tantalo Dec. ¶ 7, Ex. 6]

On September 2, 2021, Mr. Eisner's counsel responded to Mr. Mysliwiec's September 1st emails, explaining that the "authentication" question he wanted to pose still did not resolve the reporter's privilege and shield law issues because it implicitly seeks testimony about unpublished information and would also subject Mr. Eisner to cross-examination about unpublished information. Mr. Eisner's counsel also requested copies of the deposition transcripts for Joseph Luevanos and his mother, Ruth Luevanos, so that he could better assess the putative relevance of the testimony plaintiff sought from Mr. Eisner. [Tantalo Dec. ¶ 8, Ex. 7.]

On September 3, 2021, Mr. Mysliwiec responded to that email with a question: "Before I respond to you, please answer one question for me. Do any outtakes from Mr. Eisner's interviews on June 29, 2018 still exist?" [Tantalo Dec. ¶ 9, Ex. 8]

Mr. Eisner's counsel responded to Mr. Mysliwiec's question on September 9, 2021, explaining that "we do not have any unpublished footage (or notes) concerning Hal's reporting about the Simi Valley City Council meeting, the

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Ventura County Star photo, and their aftermath (as previously discussed, he was *not* at the meeting itself and has no firsthand knowledge of what transpired at the meeting)," and followed up on his request for the Luevanos' deposition transcripts. [Tantalo Dec. ¶ 10, Ex. 9]

On September 10, 2021, Mr. Mysliwiec emailed Mr. Eisner's counsel, reiterating that he had "reduced my questions to a single line of inquiry. I just want Mr. Eisner to authenticate his interviews of Ms. Liberte and Joseph Luevanos as fair, accurate and correct pursuant to FRE 901. Such inquiry would not require Mr. Eisner to reveal any sources or unpublished materials relating to those interviews, the subjects of the journalistic shields laws upon which Mr. Eisner purported to rely. I advised you that the law upon which you relied did not result in a waiver by Mr. Eisner of any journalistic shield law, if he were subject to cross-examination, and urged you to research the topic yourself. Apparently you have done so." Mr. Mysliwiec then stated that "The final nail in the journalistic-shield-law coffin is the fact that your client is in possession of no unpublished materials relating to the interviews in question. Thus, he could not, in good faith, rely on the journalistic shield laws, if there were no unpublished materials to produce." Finally, Mr. Mysliwiec explained his belief that further meet-and-confer efforts appeared to be "hopeless" and hence plaintiff would "begin the process under LR 37 to compel Mr. Eisner's deposition as soon as we can next week" unless Mr. Eisner provided a deposition date. [Tantalo Dec. ¶ 11, Ex. 10]

Mr. Eisner's counsel immediately called Mr. Mysliwiec after receiving his September 10th email, took issue with the personal attacks contained therein, and explained that Mr. Eisner would not voluntarily sit for the deposition, so if plaintiff still wished to pursue it, we appeared to be at a stalemate that would

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

require motion practice. [Tantalo Dec. ¶ 12]

Separately, that same day (September 10th) Mr. Mysliwiec emailed Mr. Eisner's counsel the "minuscripts" from the Luevanos' depositions. [Tantalo Dec. ¶ 13, Ex. 11]

Plaintiff commenced the joint stipulation process when plaintiff's local counsel emailed plaintiff's portion of the joint stipulation on September 21, 2021. [Tantalo Dec. ¶ 14]

## V.   ARGUMENT

### A.   Plaintiff's Argument

Any argument about the scope of discovery begins with the words of Rule 26 (b)(1) of the Federal Rules of Civil Procedure: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." *Travelers Indemnity Company v. Trumpet, Inc.,* No. 8:19-cv-01036-PSG(JDEx), 2020 U.S. Dist. LEXIS 166187, *2-3 (C.D. Cal. May 8, 2020); *Pittman v. County of San Diego*, Civil No. 09-CV-1952-WQH(WVG), 2010 U.S. Dist. LEXIS 97569, *2 (S.D. Cal. Sept. 17, 2010).

The issue in this case is not whether the limited deposition testimony of Mr. Eisner is "relevant" to the dispute between the parties. Its relevance is obvious. Without Mr. Eisner's television-broadcast interview of Joseph Luevanos, the new claim that plaintiff La Liberte screamed at Mr. Luevanos, refused to let him speak, said "bad things" about him, and otherwise bullied him at the June 25, 2018 Simi Valley Town Council meeting will go unchallenged by the most probative objective evidence to the contrary, Mr. Eisner's publicly-broadcast interview. (The interview was expressly referred to in three separate paragraphs of the Amended Complaint in *La Liberte v. Reid*, paragraphs 5, 52 and 53).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Without Mr. Eisner's testimony authenticating the Luevanos' interview, defendant Reid's inaccurate defense that her social media posts condemning Ms. La Liberte were "true or substantially true" might seem credible. Mr. Eisner's broadcast interviews show that they are not at all credible.

Ms. La Liberte does not, at this point, know exactly how Mr. Eisner intends to justify his refusal to give limited, deposition testimony simply authenticating his publicly broadcast interviews. Meet and confer conversations have focused on Mr. Eisner's purported journalist's privilege under: the First Amendment to the U.S. Constitution, Article I, §2(b) of the California Constitution, and Cal. Evidence Code §1070.

With respect to the U.S. Constitution, Mr. Eisner has relied almost entirely on the Ninth Circuit opinions in *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993); and *Shoen v. Shoen*, 48 F.3d 412 (9th Cir. 1995). Those decisions spend much time discussing issues not present here. To the extent they are apposite, they discuss the applicability of a *qualified* First Amendment privilege that can be overcome by a showing of need by the party seeking discovery. The focus in both *Shoen* cases was on the plaintiffs' demand for *unpublished* research materials used by the reporter. That is not what Ms. La Liberte seeks here. Indeed, Mr. Eisner has stated, through counsel, that there are no video outtakes or notes relating to his interview of Mr. Luevanos.

While the decisions in the *Shoen* cases might be read more broadly as covering any and all discovery of a reporter, including his simple authentication of publicly broadcast material, such a reading would convert a qualified privilege into an absolute privilege. Neither of the *Shoen* cases does that.

Mr. Eisner then argues that there is, in fact, an *absolute* privilege preventing Ms. Liberte's deposition of him, no matter how limited, arising out of California

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

Constitution, Article I, §2(b) and §1070 of the California Evidence Code. The language of those two provisions is virtually identical. Since that is the case, only Cal. Evidence Code §1070 need be discussed here. Specifically, it is §1070(b) that applies.  That subsection protects a radio or television reporter from having:

> to disclose the source of any information procured … for news or news commentary purposes on radio or television, or refusing to disclose any unpublished information obtained or prepared, in gathering, receiving or processing of information for communication to the public.

Again, Ms. La Liberte is seeking neither sources nor unpublished materials from Mr. Eisner. Consequently, no privilege prevents him from being deposed pursuant to the deposition subpoena served on him on July 23, 2021. To the contrary, it is his civic duty as a citizen to give the testimony that plaintiff seeks from him.

The motion to compel the authentication testimony from Mr. Eisner should be granted.

### B. Non-Party Harold Eisner's Argument

Plaintiff's motion to compel should be denied because it seeks information from a news reporter that is subject to the qualified First Amendment reporter's privilege and the California shield law, and because it would impose an undue and unfair burden on Mr. Eisner in any event.[7]

---

[7] ***For the same reasons, the subpoena should be quashed under Rule 45.*** Given the nature of the meet-and-confer and joint stipulation process, these are really motions in the alternative. Fed. R. Civ. Proc. 45(d)(3)(A)(iii) (court "must quash or modify a subpoena that…requires disclosure of privileged or other protected matter"); Fed. R. Civ. Proc. 45(d)(3)(A)(iv) (court "must quash or modify a

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

1    Plaintiff argues in her motion that "[a]ny argument about the scope of
2    discovery begins with the words of Rule 26." Rule 26 provides that:

3          Parties may obtain discovery regarding any **_nonprivileged_ _matter_**
4          that is **_relevant to any party's claim or defense_** and proportional
5          to the needs of the case, considering the importance of the issues
6          at stake in the action, the amount in controversy, the parties'
7          relative access to relevant information, the parties' resources, **_the_**
8          **_importance of the discovery in resolving the issues_**, and **_whether_**
9          **_the burden or expense of the proposed discovery outweighs its_**
10         **_likely benefit_**.

Fed. R. Civ. Proc. § 26(b)(1) (emphasis added).

12    But Rule 26 incorporates limitations on the scope of discovery. First and
13    foremost, Rule 26 discovery is expressly subject to claims of privilege. *Id.*; *see*
14    *also Shoen v. Shoen*, 5 F.3d 1289, 1292 (1993) ("*Shoen I*"). Rule 26 discovery is
15    also limited by the degree of relevance, burden, and relative utility of the
16    information sought – particularly when it is sought from non-parties. Fed. R. Civ.
17    Proc. § 26(b)(1); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
18    300 F.R.D. 406, 409 (C.D. Cal. 2014) ("In determining whether a subpoena poses
19    an undue burden, courts weigh the burden to the subpoenaed party against the
20    value of the information to the serving party. … Concern for the unwanted burden
21    thrust upon non-parties is a factor entitled to special weight in evaluating the
22    balance of competing needs in a Rule 45 inquiry.") (quotations and citations
23    omitted; formatting removed).

24    Both limitations apply here.

25    Plaintiff disingenuously contends that she "does not, at this point, know

_____

subpoena that… subjects a person to undue burden").

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S
COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

exactly how Mr. Eisner intends to justify his refusal to give limited, deposition testimony simply authenticating his publicly broadcast interviews." Yet in her very next breath, plaintiff addresses the reporter's privilege and California shield law issues that were raised in Mr. Eisner's August 5th letter,[8] arguing that (i) they are inapplicable because she does not seek unpublished information, and (ii) contending that because Mr. Eisner has no outtakes or notes from an interview he took more than three years ago, there is no risk of disclosing that information anyway. Plaintiff's position is both superficial and wrong as a matter of law.

First, the First Amendment reporters' privilege applies to all efforts to take discovery from a journalist concerning the reporter's newsgathering, not just unpublished material and confidential sources. *Shoen I*, 5 F.3d at 1292 ("When facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play.").

But even if the reporter's privilege was limited to the protection of unpublished information and confidential sources, asking Mr. Eisner whether the published portions of his interview of Luevanos are "fair, accurate, and correct" is tantamount to asking him whether the unpublished footage was consistent with the published reporting. In other words, the question is an attempt at getting back door testimony about the content of the unpublished footage. In addition, answering that question would open Mr. Eisner up to cross-examination about unpublished material by defendant – and Mr. Eisner cannot be forced into a waiver of his privilege. *Michael v. Est. of Kovarbasich*, No. 15-00275-MWF, 2015 WL

---

[8] In her portion of the joint stipulation, plaintiff refers to the letter as a "lengthy letter…laying out the legal arguments which, according to outside counsel, insulated Mr. Eisner from being deposed in Ms. La Liberte's lawsuit against Ms. Reid."

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

8750643, at *4 (C.D. Cal. Dec. 11, 2015) ("As with other privileges, the First Amendment qualified journalist's privilege may be waived."); *Ayala v. Ayers*, 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009) (journalist's privilege may be waived by providing testimony).

Second, the California shield law blankets reporters with an ***absolute immunity*** from contempt for refusing to disclose their unpublished information. Cal. Cost. Art I, § 2 (b); Cal. Evid. Code § 1070; *New York Times Co. v. Superior Ct.*, 51 Cal. 3d 453, 456 (1990). Because Mr. Eisner cannot be held in contempt for refusing to answer plaintiff's question, the shield law's protections warrant denying plaintiff's motion on that ground as well. There is no reason to compel a non-party journalist to sit for a deposition when he cannot be held in contempt for refusing to do so.

Third, even if the qualified First Amendment reporter's privilege and the California shield law's absolute immunity did not apply to plaintiff's requested discovery, the motion should still be denied. When considered in context – that plaintiff seeks to elicit extrinsic impeachment testimony from a non-party journalist (Mr. Eisner) about a non-party (Mr. Luevanos) concerning an interview from more than three years ago that did not even touch on the allegedly defamatory statements at issue in plaintiff's case against defendant – the burden on Mr. Eisner is far greater than the potential benefit to plaintiff. *Amini Innovation*, 300 F.R.D. at 409.

### 1.   The First Amendment Reporter's Privilege Bars Plaintiff's Requested Discovery

Plaintiffs' subpoena – and the lone question plaintiff allegedly wants to ask – is barred by the First Amendment reporter's privilege:

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

> ***When facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play.***

*Shoen I*, 5 F.3d at 1292 (emphasis added). The reporter's privilege:

> protects journalists against compelled disclosure in all judicial proceedings … [T]he privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice."

*Id.* at 1292, 1294-96 (quotations and citation omitted).

The privilege applies to all discovery sought from a journalist concerning "facts acquired…in the course of gathering the news," and hence it is not limited to unpublished sources or materials. *Id.*; *see also Shoen v. Shoen,* 48 F.3d 412, 414 (9th Cir. 1995) ("*Shoen II*") (the privilege protects "journalists against compelled disclosure of information gathered in the course of their work.").

The burden is on the requesting party to "demonstrate a sufficiently compelling need for the journalist's materials to overcome the privilege." *Id.* at 1296 (emphasis added). And because discovery of reporting materials risks a chilling effect on the free press, that bar is very high:

> The test we adopt must therefore ensure that compelled disclosure is the exception, not the rule. As the District of Columbia Circuit has observed, "in the ordinary case the civil litigant's interest in

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP

ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

> disclosure should yield to the journalist's privilege. Indeed, if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished."

*Shoen II,* 48 F.3d at 416 (emphasis added) (quoting *Zerilli v. Smith*, 656 F.2d 705, 712 (1981)).

In *Shoen II*, the Ninth Circuit first laid out its test for overcoming the qualified First Amendment privilege when, as here, a party seeks non-confidential information from a non-party journalist in a civil case:

> [W]here information sought is not confidential, a civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist's privilege by a nonparty ***only*** upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; ***and*** (3) clearly relevant to an important issue in the case. We note that there must be a showing of actual relevance; a showing of potential relevance will not suffice.

*Shoen II*, 48 F.3d at 416 (emphasis added). Thus, to overcome a reporter's qualified First Amendment privilege, the requesting party must satisfy all three factors. *Id.*; *see also Michael*, 2015 WL 8750643, at *4.

Plaintiff has not met – and cannot meet – her burden to satisfy the three-part *Shoen II* test. In her portion of the joint stipulation, plaintiff does not even try to do so. Her brief only addresses one of the *Shoen II* factors (relevance) and does not even argue her point against the proper legal standard.[9]

---

[9]   Plaintiff also argues in her portion of the joint stipulation that "[w]hile the decisions in the *Shoen* cases ***might be read more broadly as covering any and all discovery of a reporter, including his simple authentication of publicly broadcast material***, such a reading would convert a qualified privilege into an

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S
COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

**Factor 1:** Plaintiff does not even address the first factor: whether the information sought is "unavailable despite exhaustion of all reasonable alternative sources." *Shoen II*, 48 F.3d at 416. Mr. Eisner is not a party to this litigation, so his knowledge about the case and how it has been prosecuted is necessarily limited (another reason the burden properly rests at plaintiff's feet). But unless plaintiff has attempted to depose everyone else at the Meeting, he cannot possibly meet it. The first-hand testimony of those who actually witnessed the interactions between plaintiff and Mr. Luevanos would be far more probative of the "issue" of whether plaintiff was "civil" toward Mr. Luevanos, or just "civil compared to some of the other people" at the Meeting. [Tantalo Dec., Ex. 11 (Luevanos Depo Tr. at 32:25, 34:9-25, 52:11-15, 55:23-25] The most that Mr. Eisner could offer is his recollection (if any) of what else Mr. Luevanos said during his interview more than three years ago.

**Factor 2:** Nor does plaintiff address the second factor: that the requested discovery be "non-cumulative." *Id.* Again, as a non-party, Mr. Eisner has an information deficit. But to the extent plaintiff has already secured the testimony of others at the Meeting concerning the interactions between plaintiff and Mr. Luevanos, the requested discovery from Mr. Eisner necessarily would be cumulative. (And if plaintiff has not yet sought such testimony, then she fails under the first prong.) In addition, plaintiff contends in her portion of the joint

---

absolute privilege."

Plaintiff misses the point. The "qualified" nature of the privilege means that the court conducts a balancing test. *Shoen II* established the Ninth Circuit's version of that balancing test. But the *Shoen II* court also expressly affirmed that "***compelled disclosure is the exception, not the rule***" because "***routine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process***." *Shoen II*, 48 F.3d at 416 (emphasis added).

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

stipulation that:

> A review of Mr. Eisner's interview as broadcast by Channel 11 –
> especially the words and demeanor of Mr. Luevanos in the
> interview of him with his mother present – leave no doubt that he
> was telling the truth in that interview and not at his deposition
> taken years later.

In other words, plaintiff concedes that extrinsic testimony from Mr. Eisner is not the only way she can impeach Mr. Luevanos on this ancillary issue.[10] Should plaintiff wish to attack Mr. Luevanos' credibility, she can also try to do so with his own broadcasted "words and demeanor." Plaintiff admits as much. As plaintiff notes in her brief, she can ***also*** impeach Mr. Luevanos' deposition testimony based on the timing, to the extent he did not object to the report when it was first published more than three years ago. The impeachment testimony plaintiff seeks to compel from Mr. Eisner would be cumulative on those grounds as well.

**Factor 3:** Finally, plaintiff cannot satisfy her burden on the third and most important factor: that the discovery sought is "***clearly relevant to an important issue in the case***" and that she has shown "actual relevance" and not merely "potential relevance." *Id.* To the extent plaintiff's brief includes any argument at all in support of her motion, it is on this factor. But even then, plaintiff merely argues that the discovery she seeks from Mr. Eisner satisfies the broad Rule 26 standard. That is not the test for deposing a journalist on the subject of his or her reporting; the bar is much higher. *Shoen II*, 48 F.3d at 416. Plaintiff does not and cannot meet it.

Whether Mr. Luevanos made more detailed statements about his

---

[10]   The testimony plaintiff seeks to elicit from Mr. Eisner would be inadmissible hearsay in any event. Fed. R. Evid. 801.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

interactions with plaintiff than were aired in Mr. Eisner's report is not a topic "clearly relevant to an important issue" in plaintiff's defamation case against defendant. *Shoen II*, 48 F.3d at 416. Indeed, whether plaintiff was "civil" toward Mr. Luevanos or just "civil compared to some of the other people" at the Meeting, whether she frequently "interrupted" Mr. Luevanos, and whether she got progressively "louder" toward him are not relevant to plaintiff's claims or defendant's defenses at all. [Tantalo Dec., Ex. 11 (Luevanos Depo Tr. at 32:25, 34:9-25, 52:11-15, 55:23-25]

Plaintiff concedes that the only reason she wants to depose non-party journalist Mr. Eisner is to impeach the deposition testimony of Mr. Luevanos, another non-party.[11]

But the *Shoen II* court itself held that impeachment testimony is merely "collateral," "do[es] not relate to an important issue," and hence cannot satisfy the third prong. *Shoen II*, 48 F.3d at 418; *see also United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (reversing order denying motion to quash where "the

---

[11]   Ironically, Mr. Luevanos testified at his deposition that plaintiff did not call him a "dirty Mexican" and did not tell him he was "going to be the first deported" – the statements at issue in defendant's June 29, 2018 social media post. [Tantalo Dec., Ex. 11 (Luevanos Depo Tr. at 27:18-23]

In her portion of the joint stipulation, plaintiff argues that "[w]ithout Mr. Eisner's television-broadcast interview of Joseph Luevanos, the new claim that plaintiff La Liberte screamed at Mr. Luevanos, refused to let him speak, said "bad things" about him, and otherwise bullied him…***will go unchallenged*** by the most probative objective evidence to the contrary, Mr. Eisner's publicly-broadcast interview. … Without Mr. Eisner's testimony authenticating the Luevanos' interview, defendant Reid's inaccurate defense that her social media posts condemning Ms. La Liberte were "true or substantially true" ***might seem credible***. Mr. Eisner's broadcast interviews show that they are not at all ***credible***." [Emphasis added.]

only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes."); *Re/Max Int'l, Inc. v. Century 21 Real Est. Corp.*, 846 F. Supp. 910, 912 (D. Colo. 1994) (quashing subpoena to non-party reporter where reporter had no personal knowledge about the underlying claim and impeachment was "only possible value" in deposing him.); *McVicker v. King*, 266 F.R.D. 92, 97 (W.D. Pa. 2010) (denying motion to compel as to non-party media company where purpose was to secure impeachment testimony because impeachment testimony is not materially relevant to a claim or defense and impeachment material could be secured from alternate sources).

If discovery into collateral issues like extrinsic impeachment testimony from non-party journalists about non-party percipient witnesses were sufficient to overcome the qualified First Amendment reporter's privilege, then just as the *Zerilli* court feared, the important public policy underlying the privilege would be "substantially diminished." *Zerilli*, 656 F.2d at 712.

> ### 2. The Court Should Also Apply The Absolute Immunity Afforded Mr. Eisner Under The California Shield Law To Bar Plaintiff's Requested Discovery

In addition to the qualified First Amendment reporter's privilege, Mr. Eisner is also entitled to the protections of the California constitutional and statutory reporter's shield law.

The free speech provisions of the California Constitution expressly provide that a journalist "***shall not be adjudged in contempt… for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public***."[12] Cal. Const., Art I,

---

[12] The California statute on which the constitutional amendment is based, entitled

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

§ 2 (b) (emphasis added). The law applies to print journalists and television and radio reporters alike. *Id.* It covers all "information not disseminated to the public by the person from whom disclosure is sought…and includes, but is not limited to, all notes, outtakes, photographs, tapes or other data…whether or not published information based upon or related to such material has been disseminated." *Id.*

Unlike the qualified First Amendment reporter's privilege, the California shield law is unqualified – that is, it is an "***absolute immunity***." *New York Times*, 51 Cal. 3d at 456; *see also Miller v. Superior Ct.*, 21 Cal. 4th 883, 890 (1999) ("The shield law is, by its own terms, absolute rather than qualified in immunizing a newsperson from contempt for revealing unpublished information obtained in the newsgathering process."). Thus, in contrast to the First Amendment reporter's privilege, "the shield law's protection can[not] be overcome in a civil action by a litigant's showing of need for the newsperson's unpublished information." *New York Times*, 51 Cal. 3d at 456.

As explained above, plaintiff's proffered inquiry clearly seeks unpublished information by implication, and answering the question would open Mr. Eisner up to cross-examination on the topic. The California shield law therefore applies.

As a matter of construction, the shield law is not a privilege but rather an immunity from a contempt citation. *Id.* at 459. However, "[s]ince contempt is generally the only effective remedy against a nonparty witness, [the shield laws] grant such witnesses virtually absolute protection against compelled disclosure." *Miller*, 21 Cal. 4th at 891 (1999).

Although plaintiff has not yet asked to have Mr. Eisner held in contempt, the Court can still deny plaintiff's motion under the California shield law in the

"Newsmen's Privilege – Unpublished Information" is nearly identical. Cal. Evid. Code § 1070.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

interest of justice. *See*, *e.g.*, *Playboy Enterprises, Inc. v. Superior Ct.*, 154 Cal. App. 3d 14, 22 (1984) (vacating order compelling non-party publisher to produce its unpublished records and materials because, under the shield law, the order could not be enforced by contempt); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 121 (2007) (affirming denial of motion to compel depositions of reporters in ruling affirming order granting defendants' anti-SLAPP motion).

> **3.**    **Regardless, The Motion Should Be Denied Because The Burden On Mr. Eisner Significantly Outweighs The Limited Relevance (If Any) Of The Requested Impeachment Discovery**

Even if the qualified First Amendment privilege and the California shield law did not apply, plaintiff's motion should still be denied because the comparative burden on Mr. Eisner, a non-party, greatly outweighs the limited relevance of the requested discovery (if any). *Amini Innovation*, 300 F.R.D. at 409.

"Even if a subpoena to a non-party seeks relevant information, the Court must limit discovery…if the burden or expense of the proposed discovery outweighs its likely benefit." *LegalZoom.com v. Rocket Law. Inc.*, No. 12-CV-00942 GAF, 2015 WL 12832823, at *2 (N.D. Cal. Mar. 23, 2015) (denying motion to compel compliance with non-party subpoena) (quotations and citations omitted); *see also Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943 LAB (JMA), 2018 WL 2387580, at *5 (S.D. Cal. May 24, 2018) (denying contempt motion and precluding plaintiff from enforcing subpoena because the information sought was not relevant or proportional to the needs of the case, "particularly given the information is requested from a non-party.").

Plaintiff concedes, as she must, that the only purpose of her subpoena is to

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

depose a non-party (Mr. Eisner) to impeach the deposition testimony of another non-party (Mr. Luevanos) on a topic that is not even at issue in plaintiff's defamation case (whether Mr. Luevanos said that plaintiff was "civil" toward him, or just more "civil compared to some of the other people" at the Meeting, and whether plaintiff frequently "interrupted" him and spoke progressively "louder and louder" toward him).[13] [Tantalo Dec., Ex. 11 (Luevanos Depo Tr. at 32:25, 34:9-25, 52:11-15, 55:23-25]

To do so, plaintiff wants to ask Mr. Eisner to confirm that his published interview with Mr. Luevanos, which did not contain the additional details Mr. Luevanos has now testified he mentioned, was "true, accurate, and correct."

Even if Mr. Eisner could recall the details of that interview more than three years ago, at most the question seeks to elicit inadmissible hearsay on a collateral issue (extrinsic impeachment evidence). Fed. R. Evid. 801.

Plaintiff wants to force Mr. Eisner to sit for a deposition to provide extrinsic, hearsay testimony to impeach a non-party on a matter that is collateral at best. That cannot be a sufficient basis on which to compel a non-party journalist to be deposed over his newsgathering. *Shoen II*, 48 F.3d at 418; *see also Fields*, 663 F.2d at 881; *Re/Max*, 846 F. Supp. at 912; *McVicker*, 266 F.R.D. at 97. Especially given that there are numerous other ways plaintiff can "impeach" Mr. Luevanos' deposition testimony, should plaintiff wish to do so at trial.

---

[13]   Again, plaintiff does not seek to ask Mr. Eisner about the Meeting itself. (Mr. Eisner was not at the meeting, and therefore has no personal knowledge of the events that transpired at it.) Nor does plaintiff want to ask Mr. Eisner about defendant's social media posts. (The interview took place before defendant's posts at issue were even published, and hence the posts were not even discussed in the report.)

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY   SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

The comparative burden on Mr. Eisner clearly outweighs the limited benefit to plaintiff.

## VI.   CONCLUSION

### A.   Plaintiff's Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court grant his motion and order Harold Eisner to appear for his deposition within 10 days of the order.

### B.   Non-Party Harold Eisner's Conclusion

For the foregoing reasons, Mr. Eisner respectfully requests that the Court deny plaintiff's motion (and, instead, quash the subpoena).

Dated:  September 30, 2021

/s/ *Scott O. Luskin*

Scott O. Luskin
PAYNE & FEARS LLP
200 N. Pacific Coast Hwy., Suite 825
El Segundo, CA 90245
Tel:  (310) 689-1750
Fax:  (310) 689-1755
sol@paynefears.com

and

Ronald P. Mysliwiec

Attorneys for Plaintiff
Roslyn La Liberte

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S
COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

DATED:  September 30, 2021

*/s/ John Reichman*

John Reichman
JOHN REICHMAN LAW LLC
475 Seventh Ave.
New York, NY 10123
Tel.: (917) 626-8025
Email:  john@johnreichmanlaw.com

and

Theodore J. Boutrous Jr.
Marissa Mulligan
Melanie Sava
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7240
Email:
TBoutrous@gibsondunn.com
MMulligan@gibsondunn.com
MSava@gibsondunn.com

Attorneys for Defendant Joy Reid

DATED:  September 30, 2021

*/s/ Joel M. Tantalo*

Joel M. Tantalo
TANTALO & ADLER LLP
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Tel.: (310) 734-8695
Email: jtantalo@ta-llp.com

Attorneys for Respondent Harold Eisner

JOINT STIPULATION WITH RESPECT TO PLAINTIFF'S MOTION TO COMPEL HAROLD EISNER'S
COMPLIANCE WITH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

1

**FILER'S ATTESTATION**

2          In accordance with Local Rule 5-4.3.4(a)(2)(i), the undersigned attests that

3  all other signatories listed, and on whose behalf the filing is submitted, concur in

4  the filing's content and have authorized the filing of this Stipulation.

5

6

7  Dated:   September 30, 2021          */s/ Scott O. Luskin*
                                        Scott O. Luskin

8

9

10  4818-5472-1275.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
200 N. PACIFIC COAST HIGHWAY, SUITE 825
EL SEGUNDO, CALIFORNIA 90245
(310) 689-1750

37